IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID SOBEL, Derivatively on Behalf of Nominal Defendant SOLARWINDS CORPORATION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | 1:21-CV-272-RP |
| KEVIN B. THOMPSON, J. BARTON KALSU, WILLIAM BOCK, MICHAEL BINGLE, SETH BORO, KENNETH Y. HAO, MICHAEL HOFFMAN, CATHERINE KINNEY, JAMES LINES, EASWARAN SUNDARAM, MICHAEL WIDMANN, and PAUL J. CORMIER, | § § § § § § § § § | |
| Defendants, | § § | |
| and | § | |
| SOLARWINDS CORPORATION, | § § | |
| Nominal Defendant. | § § | |

**ORDER**

Before the Court is Defendants' Kevin B. Thompson, et al. ("Defendants") motion to dismiss on grounds of *forum non conveniens* (Mot., Dkt. 31). Plaintiff David Sobel ("Plaintiff") filed a response, (Dkt. 33), and Defendants filed a reply, (Dkt. 34). Having considered the parties' briefs, the record, and the relevant law, the Court will grant the motion.

**I. BACKGROUND**

Nominal Defendant SolarWinds Corporation (the "Company") is a publicly traded Delaware corporation that provides software products used to monitor the health and performance of information-technology networks. (Verified Amended Stockholder Derivative Complaint

("Compl."), Dkt. 30, at 7–8). In December 2020, the Company disclosed a cyberattack affecting its flagship "Orion" monitoring product. (*Id.* at 21–22). From at least March through June 2020, attackers exploited the vulnerability to monitor email traffic and access sensitive information from thousands of SolarWinds clients, including several U.S. government agencies. (*Id.*). Following this announcement and subsequent reports on the extent of the data breach, the Company's stock price fell. (*Id.* at 23–24).

Plaintiff is a shareholder in the Company. (*Id.* at 4). He claims that certain SolarWinds executives and directors failed to disclose known deficiencies in the Company's cybersecurity systems in various public filings prior to the cyberattack. (*See id.* at 11–12). On March 25, 2021, he filed this shareholder derivative action asserting four claims on the Company's behalf against thirteen individual defendants:[1] (1) breach of fiduciary duty; (2) violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); (3) violation of Section 10(b) and Section 21(D) of the Exchange Act; and (4) misappropriation of material, nonpublic information of the Company. (*Id.* at 34–38).

On September 30, 2022, Defendants filed the instant motion seeking to dismiss this action pursuant to the forum-selection clause contained in the Company's Restated Certificate of Incorporation ("COI"). (Mot., Dkt. 31). In relevant part, the COI states: "Unless the Corporation consents in writing otherwise . . . the Court of Chancery of the State of Delaware shall be the sole and exclusive forum" for "any derivative action or proceeding brought on behalf of the Corporation." (Dkt. 32-1, at 16). Because Plaintiff's claims are all derivative in nature, Defendants argue that the COI's venue provision requires dismissal of this action. In response, Plaintiff argues

---

[1] The individual defendants include the Company's former Chief Executive Officer (Kevin B. Thompson), the current Executive Vice President and Chief Financial Officer (J. Barton Kalsu), and eleven current and former directors (William Bock, Michael Bingle, Seth Boro, Kenneth Hao, Michael Hoffman, Catherine Kinney, James Lines, Easwaran Sundaram, Michael Widmann, Paul Cormier, and Jason White). (*Id.* at 4–5).

that the Company waived its right to invoke the COI's venue provision by consenting to litigate his derivative claims in this district. (Pl.'s Resp., Dkt. 33, at 1). In the alternative, Plaintiff argues that the Court should decline to enforce the COI's venue provision because it would effectively preclude him from bringing his derivative Exchange Act claims in any forum, which Plaintiff contends violates federal public policy and Delaware law. (*Id.*).

## II.  LEGAL STANDARD

The Fifth Circuit has recognized the right of corporations to enforce mandatory venue provisions, including those contained in their charters and bylaws. *See, e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016); *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 227 (5th Cir. 2020). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Unlike a traditional *forum non conveniens* analysis, the presence of a valid forum-selection clause means that district courts should "not consider arguments about the parties' private interests" nor defer to the plaintiff's forum choice. *Id.* at 64. Instead, "a district court may consider arguments about public interest factors only," keeping in mind that "forum-selection clauses should control except in unusual cases." *Id.*

It is well settled that such clauses "should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir.2007) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972) (internal quotation marks omitted)). To show that a forum-selection clause is unreasonable, a plaintiff must make a "clear showing" that: (1) the incorporation of the clause was a product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived his day in court due to the inconvenience of the forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would

contravene a strong public policy of the forum state. *Id.* As the party defying the forum-selection clause, Plaintiff "bear[s] the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63.

### III. DISCUSSION

#### A. The Company Did Not Waive Its Right to Enforce the Venue Provision

Plaintiff first argues that Defendants' motion should be denied because the Company consented to Plaintiff filing his derivative claims in this district.[2] (Pl.'s Resp., Dkt. 33, at 7–9). Specifically, Plaintiff points to an exchange that occurred on March 22, 2021, in which his counsel sought the Company's consent to file a derivative suit in this Court instead of Delaware Chancery Court, as required by the COI. (Sachs-Michaels Decl., Dkt. 33-1, at 2). The Company's counsel responded via email, stating in relevant part:

> Because the related securities class action[3] is currently pending in the W.D. Tex. before Judge Pitman, we believe it would be more efficient to litigate any related derivative action before Judge Pitman. Accordingly, if you file a derivative action in the W.D. Tex., SolarWinds does not intend to seek dismissal based on the provision in its by-laws requiring venue in Delaware for derivative matters. But if related derivative cases are filed in other courts, including Delaware, SolarWinds reserves the right to take any action necessary to ensure that only one derivative action proceeds.
>
> For example, if a shareholder files a derivative action in Delaware Chancery Court and we are unable to convince that shareholder or the Delaware Chancery Court to dismiss or stay that action in favor of the derivative action in the W.D. Tex., SolarWinds reserves the right to seek a stay or dismissal of the W.D. Tex. derivative action in favor of the Delaware derivative action.

---

[2] Generally, courts must first determine if the forum-selection clause is mandatory or permissive, and whether it encompasses the claims at issue. *See Weber*, 811 F.3d at 768. Here, the parties do not dispute that the COI's venue provision is mandatory and applicable to Plaintiff's claims.

[3] Before Plaintiff commenced this derivative action, a separate group of SolarWinds shareholders filed a putative class-action lawsuit against the Company in this district, asserting direct claims for Exchange Act violations based on the same cybersecurity event. *See In re SolarWinds Corporation Securities Litigation*, No. 1:21-cv-138-RP (W.D. Tex. filed Feb. 9, 2021) (the "Securities Class Action").

> This email should not be construed as a broad waiver by SolarWinds of its mandatory Delaware venue provisions, but rather is limited to the unique circumstances of this case.

(Email, Dkt. 33-2, at 2) (footnote added). Later that day, Plaintiff's counsel again sought confirmation that the Company would not assert that any "stay, dismissal, or transfer is warranted due to [Plaintiff] having violated the forum selection clause" by filing suit in this district. (*Id.*). The Company's counsel responded:

> We will not argue that you violated the forum selection clause – we agree to a limited waiver under the unique circumstances here. But if the situation discussed below arises and we are forced to litigate in Delaware, we reserve the right to raise the forum selection clause with Judge Pitman.

(*Id.* at 1).

Six months later, a separate group of SolarWinds shareholders filed a putative derivative action in Delaware Chancery Court based on the same cybersecurity attack.[4] On September 6, 2022, the Delaware Chancery Court dismissed that action on the merits with prejudice. (Del. Ch. Ct. Order, Dkt. 32-2).

Defendants argue that the related derivative action in Delaware triggered their right to invoke the COI's venue provision in this case. (Reply, Dkt. 34, at 3–6.) Plaintiff disagrees, arguing that the Company merely "reserve[ed] the right to ensure that a single derivative action proceeds." (Pl.'s Resp., Dkt. 33, at 8). According to Plaintiff, because the Delaware action has now been dismissed, "there is no danger of more than one action proceeding," which effectively nullifies SolarWinds's reservation of its right to invoke the COI's venue provision in this case. (*Id.*).

---

[4] The related derivative action, which was filed in Delaware Chancery Court on November 1, 2021, is styled *Construction Industry Laborers Pension Fund, Central Laborers' Pension Fund, Lawrence Miles and Brian Seavitt, derivatively on behalf of Solarwinds Corporation, v. Mike Bingle, William Bock, Seth Boro, Paul J. Cormier, Kenneth Y. Hao, Michael Hoffmann, Dennis Howard, Catherine R. Kinney, James Lines, Easwaran Sundaram, Kevin B. Thompson, Jason White, Michael Widmann, and Solarwinds Corporation, Nominal Defendant,* C.A. No. 2021-0940-SG.

The Court disagrees with Plaintiff's interpretation of the email exchange. First, even under Plaintiff's construction, Defendants could still properly invoke the COI's venue provision because, when the instant motion was filed, the Delaware dismissal order was being appealed to the Delaware Supreme Court (*see* Notice of Appeal, Dkt. 35-1)—thus, there remained "more than one [derivative] action proceeding."[5] (Pl.'s Resp., Dkt. 33, at 8). More importantly, Plaintiff's reading contradicts the plain text of the Company's waiver. In the email exchange, SolarWinds reserved the right to enforce the COI's venue provision if "related derivative cases are filed in other courts," or if the Company is "forced to litigate in Delaware." (Email, Dkt. 33-2, at 1–2). That is exactly what happened. Plaintiff does not dispute that the derivative action in Delaware Chancery Court was "related" to the instant case, as it asserted similar claims based on the same underlying events. Plaintiff also does not dispute that Defendants were "forced to litigate" the derivative action in Delaware. Based on the plain language of the parties' email exchange, these events triggered SolarWinds's reserved right to "take any action necessary to ensure that only one derivative action proceeds," including to "raise the forum selection clause with [this Court]." (*Id.*).

The email also stated that if Defendants are not able to convince the Delaware court to "dismiss or stay that action in favor of the derivative action in the W.D. Tex., SolarWinds reserves the right to seek a stay or dismissal of the W.D. Tex. derivative action in favor of the Delaware derivative action." (*Id.*). Plaintiff argues that this language means that once the Delaware action was dismissed, SolarWinds's reservation of its right to invoke the COI's venue provision in this case became ineffective. (Pl's Resp., Dkt 33, at 8). The Court disagrees. First, this language was offered only as an example, not as an exhaustive list of situations in which Defendants reserved the right to

---

[5] On June 7, 2023, Defendants notified this Court that the Delaware Supreme Court affirmed the Court of Chancery's order and judgment dismissing the related derivative action. (Notice, Dkt. 38). Because the Court does not construe Defendants' reservation of rights to be contingent upon the status of the Delaware derivative action, this fact has no bearing on the Court's decision.

invoke the venue provision. As such, it does not undermine the Company's broader, unqualified reservation of the right to "take any action necessary to ensure that only one derivative action proceeds." (Email, Dkt. 33-2, at 2). Second, absent clear textual support, it would be unreasonable to assume that the Company intended for its reservation of rights to expire the moment the Delaware action was dismissed. Fairly read, the email exchange shows that the Company's intent was to reserve its right to enforce the COI's venue provision as necessary to avoid having to litigate the same issues twice.

The parties' conduct in this litigation only bolsters this interpretation. Shortly after Plaintiff commenced this suit, the parties presented this Court with an agreed motion to stay pending the resolution of motions to dismiss the related Securities Class Action. (Agreed Mot., Dkt. 10). That stay order, which the Court granted, stated that "Defendants reserve all defenses, including, but not limited to, those based on the mandatory venue provision in the Certificate of Incorporation of SolarWinds Corporation." (Order, Dkt. 23, at 2). Furthermore, after the Delaware action was filed but before it was dismissed, Plaintiff joined Defendants in proposing a briefing schedule that allowed Defendants to file an initial motion to dismiss that addressed solely "jurisdiction and venue." (Agreed Mot., Dkt. 26). In that motion, the parties advised the Court that bifurcating Defendants' venue-based motion from its merits-based motion would "promote judicial efficiency and avoid the risk of inconsistent rulings on the merits," in light of the pending motion to dismiss the Delaware derivative action. (*Id.* at 2). These actions are inconsistent with the notion that Defendants waived their ability to enforce the COI's venue provision. If Plaintiff believed that the Delaware court's dismissal of the related derivative action would cut-off Defendants' ability to invoke the COI's venue provision here, he had ample time and opportunity to clarify that understanding at earlier junctures in the case. In sum, the Court finds that Defendants did not waive their right to invoke the venue provision.

7

**B. Plaintiff Has Not Established that Enforcing the Venue Provision Is Unreasonable**

Plaintiff next argues that, even if Defendants did not waive their right to enforce the venue provision, the Court should not enforce it because doing so would be unreasonable under the circumstances. (Pl.'s Resp., Dkt. 33, at 9–12). As noted, the Fifth Circuit has recognized four exceptions to the general rule that forum-selection agreements should be enforced: (1) the incorporation of the clause was a product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived his day in court due to the inconvenience of the forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state. *See Braspetro Oil Servs. Co.*, 240 F. App'x at 615. Here, Plaintiff relies solely on the fourth exception, arguing that enforcing the venue provision would contravene federal policy underlying the Exchange Act and would violate Delaware law. (Pl.'s Resp., Dkt. 33, at 7–12.) For the reasons below, neither argument provides a sufficient basis to disregard the COI's venue provision.

    1. <u>Federal Policy Does Not Preclude Enforcement of the Venue Provision</u>

The Exchange Act gives federal courts exclusive jurisdiction over suits filed under the Act. *See* 15 U.S.C. § 78aa. Here, Plaintiff alleges two derivative claims for Exchange Act violations. Because Delaware Chancery Court cannot exercise jurisdiction over those federal claims, the parties agree that enforcing the COI's venue provision will effectively preclude Plaintiff from asserting his derivative Exchange Act claims in any forum. According to Plaintiff, this result "conflicts with the exclusive jurisdiction mandate of the Exchange Act," and is contrary to Congress's policy of providing "an exclusive, federal forum for Exchange Act claims." (Pl.'s Resp., Dkt. 33, at 10). He also contends this result would violate the Exchange Act's anti-waiver provision, which voids "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title." 15 U.S.C. § 78cc(a).

Plaintiff cites no binding authority holding that the federal courts' exclusive jurisdiction over Exchange Act claims supplies an independent basis, let alone the required strong public policy, to preclude enforcement of a valid forum-selection clause. To the contrary, the Supreme Court has recognized the strong federal policy *in favor* of enforcing such clauses in closely similar contexts. For example, in *Scherk v. Alberto-Culver Co.*, the Supreme Court rejected the notion that the anti-waiver provisions of the federal securities laws prevented enforcement of a valid forum-selection clause in an international contract. 417 U.S. 506, 519 (1974) (noting that arbitration agreements are "a specialized kind of forum-selection clause."). Similarly, in *Shearson/Am. Exp., Inc. v. McMahon*, the Supreme Court held that the Exchange Act's anti-waver provision did not bar enforcement of a valid pre-dispute arbitration agreement, even though it effectively barred the plaintiff from bringing Exchange Act claims in a U.S. court. 482 U.S. 220, 224 (1987).

The Fifth Circuit has applied these principles to reject the same arguments Plaintiff makes here. In *Haynsworth v. The Corp.*, U.S. investors in a foreign underwriting exchange sued the exchange in federal court, asserting federal and state securities violations. 121 F.3d 956, 968–69 (5th Cir. 1997). The defendant moved to dismiss pursuant to a forum-selection clause contained in the investors' agreement that required suit to be brough in England, under English law. *Id.* As here, the plaintiffs argued that enforcing the clause would violate U.S. public policy and the Exchange Act's anti-waiver provision because it would effectively extinguish their ability to bring federal securities claims in a U.S. court. *Id.* at 968. The Fifth Circuit rejected those arguments, citing the strong federal policy favoring enforcement of such agreements, as long as the alternative forum adequately protects the plaintiffs' substantive rights to relief. *Id.* at 969–70. The court observed that "English law provides a variety of protections for fraud and misrepresentations in securities transactions," which were "adequate to protect [the investors'] interests and the policies behind the [securities] statutes at issue." *Id.* at 969–70. Accordingly, the court held that the forum-selection clause was enforceable. *Id.*

9

The same reasoning compels rejection of Plaintiff's arguments in this case. While enforcing the COI's venue provision would foreclose Plaintiff's derivative Exchange Act claims, there is no indication that it would deprive him of all substantive rights under the statute. First, as Defendants observe—and Plaintiff does not dispute—Delaware law recognizes derivative state-law claims with available remedies that are commensurate to those available under Plaintiff's federal derivative claims. (Mot., Dkt. 31, at 12). Moreover, Plaintiff does not dispute that the COI's venue provision only applies to derivative claims—it does not prevent him from *directly* pursuing Exchange Act claims in any federal court. In the face of a valid forum-selection clause, differences in the availability of specific causes of action is only relevant where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *accord Weber*, 811 F.3d at 774 (holding that a venue provision should be enforced so long as the plaintiff retains access to a "basically fair court system in that forum that would allow the plaintiff to seek some relief"). Given the similar remedies available in Delaware and the fact that Plaintiff retains his right to assert direct Exchange Act claims in federal court, Plaintiff has not shown that enforcing the COI's venue provision violates a strong federal policy.

Plaintiff relies primarily on the Seventh Circuit's decision in *Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*, 23 F.4th 714 (7th Cir. 2022). In that case, a Boeing shareholder brought derivative Exchange Act claims in Illinois federal court. The district court dismissed on grounds of *forum non conveniens*, citing a mandatory venue provision in Boeing's bylaws requiring all derivative actions to be brought in Delaware Chancery Court. *Id.* at 717–18. On appeal to the Seventh Circuit, a divided panel reversed. The court held that, because the venue provision would effectively deprive the plaintiff of the ability to assert Exchange Act claims in federal court, enforcement would violate the Exchange Act's anti-waiver provision. *Id.* at 727. Consequently, the Court also held that

10

enforcing the venue provision would violate Section 115 of the Delaware General Corporation Law, which requires that a Delaware corporation's governing documents be "consistent with applicable jurisdictional requirements." *Id.* (citing 8 Del. Code § 115). Defendants respond that *Seafarers* "is an outlier opinion" that did not consider the crucial fact that the plaintiff could always assert direct Exchange Act claims in federal court. (Mot., Dkt. 31, at 16 n.2).

Although *Seafarers* lends support for Plaintiff's position, the Court declines to adopt its reasoning given the binding authorities above, which hold that enforcement of a valid forum-selection clause does not violate the Exchange Act's anti-waiver provision. The Court further notes that this approach reflects the consensus of the courts of appeals that have addressed the issue. *See, e.g.*, *Sun v. Advanced China Healthcare*, 901 F.3d 1081, 1088–90 (9th Cir. 2018); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir. 1998); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *Shell v. RW Sturge*, 55 F.3d 1227, 1229 (6th Cir. 1995); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993); *Riley v. Kingsley Underwriting*, 969 F.2d 953, 956 (10th Cir. 1992).

Finally, Plaintiff is incorrect to suggest that the Exchange Act's exclusive-jurisdiction provision somehow "require[es]" this Court to adjudicate his federal securities claims. (Pl's Resp., Dkt. 33, at 8-10). Neither case cited by Plaintiff supports this argument. For example, Plaintiff cites *Merrill Lynch, et. al. v. Manning*, 578 U.S. 374 (2016) for the proposition that his derivative Exchange Act claim "must proceed in federal court." (Pl's Resp., Dkt. 33, at 10). But *Merrill Lynch* did not involve enforcement of a forum-selection clause; it instead focused on the extent to which the Exchange Act's exclusive-jurisdiction provision encompasses overlapping state-law claims. 578 U.S. at 382. Moreover, the language Plaintiff quotes was not part of the Supreme Court's holding, but merely a description of one of the litigants' positions (which the Court rejected). *Id.* Plaintiff also cites the abstention-doctrine case of *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) for the general proposition that federal courts have a "virtually unflagging obligation" to hear

11

cases within their exclusive jurisdiction. But that case also did not involve enforcement of a valid forum-selection clause, and—as the above cases illustrate—the obligation to hear cases within a court's exclusive jurisdiction is outweighed by the strong presumption in favor of enforcing such clauses.

In sum, Plaintiff has not met his heavy burden to show that enforcing the venue provision violates a strong federal policy underlying the Exchange Act.

        2.   <u>Delaware Law Does Not Preclude Enforcement of the Venue Provision</u>

In a similar vein, Plaintiff also argues that enforcing the COI's venue provision in this case would violate Section 115 of the Delaware General Corporation Law. In relevant part, Section 115 states that a corporation's "bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." 8 Del. C. § 115. Plaintiff argues that the text of Section 115, when read together with the legislative history and selected statements by the Delaware Supreme Court, raises the strong inference that Section 115 should be read to prohibit a forum-selection clause that would require Exchange Act claims to be brought in state court, as such an application would be "[in]consistent with applicable jurisdictional requirements" in the Exchange Act. (Pl.'s Resp., Dkt. 33, at 11). Again, the Court disagrees.

First, other than the bare statement that SolarWinds's "governing documents must comply with Delaware law" (Pl's Resp., Dkt. 33, at 11), Plaintiff does not explain why Delaware law should govern the enforceability of the COI's venue provision in this action. The doctrine of *forum non conveniens* is one of federal law, not state law. *Haynsworth*, 121 F.3d at 962. And the public-policy exception Plaintiff relies on asks whether enforcement "would contravene a strong public policy of the *forum* state," (*id.* at 963 (emphasis added)), not a party's state of incorporation. But even assuming Delaware law governed, Plaintiff's argument would fail because it is based on the incorrect premise

that enforcing the COI's venue provision would contravene "applicable jurisdictional requirements" in the Exchange Act. As the Court has already explained, Plaintiff has not made this showing.

Second, neither of the Delaware cases cited by Plaintiff supports his argument that Section 115 applies here. In *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, the Delaware Chancery Court addressed a facial challenge to a forum-selection clause providing that litigation relating to a corporation's internal affairs should be conducted in Delaware. 73 A.3d 934, 952 (Del. Ch. 2013). The court held that such clauses were statutorily and contractually valid under Delaware law, but expressly "decline[d]" to resolve whether a clause designating the Delaware Chancery Court as the forum would be enforceable in federal court against a "claim within the exclusive jurisdiction of the federal courts." *Id.* at 962–63. Thus, the court's supposition that a hypothetical defendant "would have trouble" enforcing such a clause is pure dicta. *Id.*

Plaintiff also cites *Salzberg v. Sciabacucchi* for the proposition that "'federal forum provisions' would not be enforceable if a company applied them to 'foreclose suits in federal court.'" (Pl's Resp., Dkt. 33, at 11 (quoting *Salzberg*, 227 A.3d 102, 117 (Del. 2020)). But this misconstrues the case's holding. In *Salzberg*, the Delaware Supreme Court analyzed whether Section 115 prohibits a company from adopting a forum-selection clause that requires certain federal securities claims to be brought in federal court. *Id.* at 109, 120. The court held that such clauses do not violate Section 115, largely because Section 115 was "intended to address claims requiring the application of Delaware corporate law *as opposed to federal law.*" *Id.* at 120 n.79 (emphasis added). Since federal claims are not "internal corporate claims" for purposes of Section 115, *Salzberg* suggests that the statute is inapplicable to Plaintiff's Exchange Act claims. At most, the law is silent on whether bylaws may require federal claims to be brought in state courts. And, because Section 115 is a permissive (rather than restrictive) statute, the Court declines to interpret its silence on the issue as prohibiting the application of forum-selection clauses to federal claims. *See id.* at 120 (rejecting the notion that

13

"Section 115's permissive provision defines the whole universe of permitted forum-selection provisions"). Simply put, Plaintiff has not shown that enforcing the COI's venue provision would violate Delaware law.

### C. Public Interest Factors Do Not Weigh Against Enforcement

Finally, in accordance with *Atlantic Marine*, the only remaining consideration is whether dismissal without prejudice is improper because of public-interest factors, such as court dockets or local interests in the case.[6] *See Atlantic Marine*, 571 U.S. at 64; *see also Weber*, 811 F.3d at 774. Plaintiff does not identify any of these factors, and the Court finds none that apply. Thus, again, Plaintiff has not met his burden, and the venue provision requires dismissal of this action.

### IV. CONCLUSION

For the reasons above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 31), is **GRANTED**. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** on *forum non conveniens* grounds.

**SIGNED** on July 5, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[6] Public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).